UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA C. BORGER,<br><br>Plaintiff,<br><br>vs.<br><br>REBECCA WELBIG, Medical Director of Nursing at Correctional Medical Management LLC, Individual & Official Capacity; NURSE M1163, Nurse on duty at Correctional Medical Management LLC, Individual & Official Capacity; NURSE M1153, Nurse on duty at Correctional Medical Management LLC, Individual & Official Capacity; MH2018WILSON, MH Counselor at Correctional Medical Management LLC in individual and official capacity; COUNSELOR M1185; and COUNSELOR M1007, MH counselor at Correctional Medical Management LLC in individual and official capacity,<br><br>Defendants. | 4:24-CV-04090-ECS<br><br><br>**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING** |

Plaintiff, Joshua C. Borger, an inmate at the Minnehaha County Jail,[1] filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Borger moves for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 2, 3. He also filed an amended complaint. Doc. 12.

---

[1] At the time Borger filed his complaint, he was incarcerated at the Minnehaha County Jail. Doc. 1. He was later released, but he was rearrested and is currently housed at the Minnehaha County Jail. Doc. 10.

## I.    Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Borger reports average monthly deposits of $31.52 and an average monthly balance of $4.93. Doc. 3 at 1. Based on this account information, the Court grants Borger leave to proceed in forma pauperis and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

To pay his filing fee, Borger must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the

> prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id.  The installments will be collected pursuant to this procedure.  The Clerk of Court will send a copy of this order to the appropriate financial official at Borger's institution.  Borger remains responsible for the entire filing fee, as long as he is a prisoner.  See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    Amended Complaint

Borger filed what he marked as an amended complaint.  Doc. 12.  Borger's amended complaint includes facts occurring after his original complaint was filed.  See id.; Doc. 1.  Amended pleadings "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading[,]" but supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings."  6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1504 (3d ed. 2024).  A court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  This Court liberally construes Borger's filing as a motion for leave to file a supplemental complaint, which is granted.  This Court will consider Borger's original and supplemental complaint when screening under 28 U.S.C. § 1915A(b).

III.    **1915A Screening**

A.    **Factual Background**

On February 23, 2024, when Borger was first incarcerated at the Minnehaha County Jail, he informed Correctional Medical Management, LLC (CMM),[2] staff that his testicle was swollen and causing him pain. Doc. 1 at 4. On February 26, 2024, Borger was seen by a medical provider. Id. Despite the increased swelling, the provider did nothing for Borger. Id. He was not prescribed any medication to reduce the pain or swelling. Id. Borger claims that Nurse M1153 and Nurse M1163 denied him access to medical help for his testicular troubles. Id. at 2, 4.

On March 4, 2024, Borger sent several tickets seeking medical help because he suffered from tremendous pain, with his testicle swollen to the size of a grapefruit, yet staff responded that his medical concern had already been addressed. Id. at 4. That same day, starting around 1:00 p.m. and continuing throughout the day, Borger pushed the emergency medical button multiple times. Id. Around 9:00 p.m., Borger was taken to the hospital. Id. CMM providers and nurses did not give Borger the hospital-prescribed medication until five days after he was discharged. Id.

At some point, Borger was released from the Minnehaha County Jail. He was later rearrested and once again housed at the Minnehaha County Jail. Doc. 10.

On December 2, 2024, Borger sent an electronic request to the Minnehaha County Jail Mental Health Department seeking his mental health medication. Doc. 12 at 5. Borger was

---

[2] CMM is a private company that has contracted with the Minnehaha County Jail to provide medical services. Private companies act under color of state law when providing services in the jail and can be sued under § 1983. See West v. Atkins, 487 U.S. 42, 56 n.15 (1988); Davis v. Buchanan Cnty., 11 F.4th 604, 617 (8th Cir. 2021). For the purposes of screening, this Court assumes that CMM was acting under color of law.

4

taking the medication before being rearrested, but Counselor M1007 denied his request because he "wasn't taking them prior to coming in." Id.

On December 5, 2024, while in disciplinary housing, Borger attempted to hang himself. Id. Correctional officers found Borger and got him down. Id. Borger was taken to the hospital. Id. When he was cleared to return to the jail, Borger was punished with five days in disciplinary housing—in the same room where he attempted suicide. Id. at 5–6.

Borger sent multiple requests for treatment to the medical and mental health departments. Id. at 6. He was not checked on to see how he was feeling for approximately sixty-three days. Id. After another two weeks, Borger was seen by a psychiatrist, who prescribed him medication. Id. Borger claims that he was subjected to a serious lack of healthcare, without concern for his well-being. Id. Borger also filed nine medical grievances, and only the last one was responded to on February 5, 2025. Id.

Borger sues Rachel Welbig, Nurse M1163, Nurse M1153, MH2018Wilson, and Counselor M1007 in their individual and official capacities. Id. at 2; Doc. 1 at 2. He does not specify in which capacity he sues Counselor M1185. See Doc. 12. He sues all defendants for violating his right to be free from cruel and unusual punishment. Id. at 4; Doc. 1 at 4. Borger would "like to see the inmates be taken seriously, as well as have better Health Care." Doc. 1 at 7. In his original complaint, he requested $250,000 from all defendants as well as $5,000 from Welbig and $10,000 from Nurse M1153. Id. In his supplemental complaint, Borger seeks $2,000,000 because of "the physical pain [he] had to endure [] and the mental trauma [he] had to live with, And the lack of concern for [his] rights and [his] wellbeing." Doc. 12 at 7.

### B.    Legal Standard

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).  A court screens a complaint filed by a prisoner under § 1915A when the "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Several courts have held that "contractors of a department of corrections to provide medical services in a prison [were] considered government entities or officers for § 1915A purposes." Keith v. Summers, 4:24-CV-04077-LLP, 2025 WL 267049, at *2 (D.S.D. Jan. 21, 2025) (collecting cases).  Thus, this Court screens Borger's complaint under 28 U.S.C. § 1915A.[3]

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint.  Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995).  Pro se and civil rights complaints must be liberally construed.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted).  Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).  Civil rights complaints cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

---

[3] Even if these defendants were not government actors under § 1915A and not subject to screening under § 1915A, this Court's analysis would be the same under 28 U.S.C. § 1915(e).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 556).

## C.     Legal Analysis

### 1.     Counselor M1185's Capacity

Borger does not specify if he sues Counselor M1185 in his or her individual or official capacity. Doc. 12. When a plaintiff does not specify in which capacity he sues a defendant, the court must apply the course of proceedings test. S.A.A. v. Geisler, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "The fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in [his or] her individual capacity' and that '[his or] her personal liability was at stake.'" Id. at 1139 (quoting Daskalea v. D.C., 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a

defendant personally liable can be ascertained fairly." Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." Id. "[N]o single factor is dispositive in an assessment of the course of proceedings." Id. at 1140 (quoting Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)).

Here, Borger specifies the capacity of all defendants except for Counselor M1185. See Docs. 1, 12. It appears that Borger inadvertently failed to specify in which capacity he sues Counselor M1185 and Borger intended to sue Counselor M1185 in the same capacities as all other defendants. Borger requests money damages against Counselor M1185. Doc. 12 at 7. That said, liberally construed, his complaint could also allege a request for injunctive relief to improve healthcare for inmates. Doc. 1 at 7. Thus, for the sake of completeness and for the purposes of screening, this Court will liberally construe Borger's supplemental complaint to allege claims against Counselor M1185 in his or her individual and official capacity.

### 2.    Deliberate Indifference to Serious Medical Needs

Borger claims that defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment. Doc. 1 at 4; Doc. 12 at 4. Inmates' claims for inadequate medical care are analyzed under the Eighth Amendment, but pretrial detainees' claims are analyzed under the Fourteenth Amendment's due process protections. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam). It is unclear from Borger's filings whether he was a pretrial detainee or convicted inmate at the time the events occurred. Because the Eighth Circuit has not established different standards for analyzing deliberate indifference to serious medical needs claims by pretrial detainees, such claims are analyzed under the same

deliberate indifference standard as claims by convicted inmates. *Id.* at 152–53. Thus, the analysis is the same regardless of whether Borger was a convicted inmate or pretrial detainee at the time the events occurred.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes "both an objective and a subjective component." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately

disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (8th Cir. 1994).

### a.    Individual Capacity Claims

Vicarious liability is not applicable to § 1983 suits; "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).  In order to state an individual capacity claim, Borger must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

Here, Borger claims that Nurse M1153 and Nurse M1163 denied him access to medical care for swelling and pain in his testicle. Doc. 1 at 2, 4.  Borger alleges that Counselor M1007 denied him mental health medication upon re-entry to the jail.  Doc. 12 at 5.  He claims that Counselor MH2018Wilson disregarded his mental health.  Id. at 2.  Thus, Borger has alleged sufficient facts for his deliberate indifference to serious medical needs claims against Nurse M1153, Nurse M1163, Counselor M1007, and MH2018Wilson in their individual capacities for money damages to survive § 1915A screening.

Borger sues CMM Medical Director of Nursing Rebecca Welbig and Counselor M1185. Doc. 1 at 2; Doc. 12 at 1.  However, Borger has not indicated that Welbig or Counselor M1185

participated in the unconstitutional conduct, nor has he alleged that unconstitutional conduct occurred through Welbig and Counselor M1185's failure to train or supervise offending actors. Thus, Borger's deliberate indifference to serious medical needs claims against Welbig and Counselor M1185 in their individual capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b.    Official Capacity Claims

Official capacity claims are construed as claims against the individual's employer. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). "Some courts differ on whether official capacity claims against employees of companies who contract with a jail are construed as claims against the government or claims against the contractor." Keith, 2025 WL 267049, at *6.

If this Court construes Borger's official capacity claims as claims against Minnehaha County, the county government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978). Municipal liability attaches "(1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; [or] (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." Moyle v. Anderson, 571 F.3d 814, 817–18 (8th Cir. 2009) (citing Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir. 2008)). Liability premised on an unofficial custom requires that the plaintiff allege facts supporting a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental

11

entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct." Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)).

If this Court construes Borger's official capacity claims as claims against CMM, Borger must show that CMM had an unconstitutional policy or custom because vicarious liability is inapplicable to a corporation under § 1983. Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993) ("The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." (citing Monell, 436 U.S. at 694)); Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (citation omitted).

Regardless of whether this Court construes Borger's official capacity claims as claims against Minnehaha County or CMM, he has failed to state a claim upon which relief may be granted. Borger has not alleged that Minnehaha County or CMM had an unconstitutional policy. See Docs. 1, 12. Borger has also not identified any unofficial custom of Minnehaha County or CMM that was adopted with deliberate indifference. Although a complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss," it must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). Borger has not created an inference that the alleged conduct resulted from an unconstitutional policy or custom. Thus, Borger's official capacity claims against all

12

defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.    Conclusion

It is therefore ORDERED:

1.    That Borger's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

2.    That the Clerk of Court shall send a copy of this order to the appropriate financial official at Borger's institution.

3.    That the institution having custody of Borger is directed that whenever the amount in Borger's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Borger's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1) until the $350 filing fee is paid in full.

4.    That Borger's deliberate indifference to serious medical needs claims against Nurse M1153, Nurse M1163, Counselor M1007, and MH2018Wilson in their individual capacities for money damages survive § 1915A screening.

5.    That Borger's deliberate indifference to serious medical needs claims against Welbig and Counselor M1185 in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.    That Borger's official capacity claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7.    That the Clerk shall send blank summons forms and U.S. Marshals Service forms (Form USM-285) to Borger so that he may complete the forms to cause his original

and supplemental complaints to be served upon Defendants Nurse M1153, Nurse

M1163, Counselor M1007, and MH2018Wilson.

8.    That Borger shall complete and send the Clerk of Court a separate summons and

USM-285 form for each defendant within **thirty days from the date of this**

**Court's screening order.**  Upon receipt of the completed summonses and USM-

285 forms, the Clerk of Court will issue the summonses.  If the completed

summonses and USM-285 forms are not submitted as directed, the original and

supplemental complaints may be dismissed.

9.    That the United States Marshals Service shall serve the completed summonses,

together with a copy of the complaint, Doc. 1, the supplemental complaint, Doc.

12, and this opinion and order upon Defendants Nurse M1153, Nurse M1163,

Counselor M1007, and MH2018Wilson.[4]

10.    That the defendants shall serve and file an answer or responsive pleading to the

Complaint on or before 21 days following the date of service or 60 days if the

defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

---

[4] Merely providing the employees' identification numbers may be insufficient information for the United States Marshals Service to execute service on these defendants.  This Court will order the United States Marshals Service to attempt to serve defendants with the identifying information Borger provides in the complaint, supplemental complaint, summonses, and U.S. Marshals Service forms, but it is Borger's responsibility to provide the United States Marshals Service with sufficient information to effect service.  Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir. 1993) (per curiam).  When Borger learns the names of these defendants, he should inform the Clerk of Court.

11.   That Borger will keep this Court informed of his current address at all times.  All parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules while this case is pending.

DATED April *15*, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE